1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT SEATTLE

10   DAVIS WIRE CORPORATION,                   CASE NO. C14-47 MJP

11                      Plaintiff,             ORDER GRANTING
                                               DEFENDANT'S MOTION FOR
12          v.                                 SUMMARY JUDGMENT

13   TEAMSTERS LOCAL UNION NO 117,

14                      Defendant.

15

16          THIS MATTER comes before the Court on Defendant Teamsters Local Union No. 117's

17   Motion for Summary Judgment.  (Dkt. No. 37.)  Having reviewed the motion, Plaintiff Davis

18   Wire Corporation's response, (Dkt. No. 43), and the related record, the Court hereby GRANTS

19   Defendant's motion.

20                              **Background**

21          Plaintiff Davis Wire Corporation operates a plant in Kent, Washington for the

22   manufacture of wire for agriculture, construction and utilities, among other things.  (Dkt. No. 1 at

23   2) (Complaint ("Compl.") ¶3.)  Defendant Teamsters Local Union No. 117 represents a group of

24   employees who perform work at the plant.  (Dkt. No. 1 at 2) (Compl. ¶5.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 1

1    Plaintiff and Defendant are signatories to successive collective bargaining agreements

2    ("CBAs").  (Dkt. No. 1 at 2) (Compl. ¶6.); (Dkt. No. 26 at 2) (Answer ("Ans.") ¶6.)  The most

3    recent CBA is the September 1, 2012 through August 31, 2016 agreement (the "2012–2016

4    Agreement") which covers work performed by union members for Plaintiff at its Kent,

5    Washington plant.  (Id.)  The prior CBA between the parties had effective dates from December

6    1, 2008 through November 30, 2011.  (Dkt. No. 1 at 3) (Compl. ¶8.); (Dkt. No. 26 at 2) (Ans.

7    ¶8.)

8    Section 21.7 of the 2012–2016 Agreement provides "[w]hen the nature of a work

9    assignment prevents an employee from being relieved of duty for a meal period, it is agreed that

10   the employee shall have an on-duty meal period.  The on-duty meal period shall be counted as

11   time worked."  (Dkt. No. 39-1 at 13) (Declaration of Spencer Nathan Thal in Support of

12   Defendant's Motion for Summary Judgment ("Thal Decl."), Ex. A.)  The language of Section

13   21.7 was identical in the CBA immediately preceding the 2012–2016 Agreement.  (Dkt. No. 1 at

14   3) (Compl. ¶8); (Dkt. No. 26 at 2) (Ans. ¶8.)

15   In 2011, before the 2008–2011 CBA expired, the parties engaged in negotiations for a

16   new agreement.  (Dkt. No. 1 at 3) (Compl. ¶9); (Dkt. No. 26 at 2) (Ans. ¶9.)  Negotiations

17   between the parties broke down in the spring and summer of 2012.  (Dkt. No. 39 at 2) (Thal

18   Decl. ¶6.); (Dkt. No. 43 at 4.)  The 2012–2016 Agreement was executed by Plaintiff in October

19   2012 and by Defendant in November 2012.  (Dkt. No 39 at 2) (Thal Decl. ¶7); (Dkt. No. 1 at 3)

20   (Comp. ¶9.)

21   In early 2012, Defendant informed Dmitri Iglitzin, an attorney, that workers at Plaintiff's

22   Kent plant "believed they were not getting the rest or meal period breaks to which they were

23   entitled under law."  (Dkt. No. 38 at 2) (Declaration of Dmitri Iglitzin ("Iglitzin Decl.") in

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 2

1 Support of Defendant's Motion for Summary Judgment, ¶3); (Dkt. No. 43 at 7.)  Mr. Iglitzin

2 advised Defendant of his opinion that Plaintiff's practices deprived the workers of the meal and

3 rest breaks they were entitled to under Washington law, among other things. (Dkt. No. 38 at 2)

4 (Iglitzin Decl. ¶5.)  He also agreed to represent the workers in a suit against Plaintiff.  (Id. at 3)

5 (Iglitzin Decl. ¶7.)

6       On or about April 30, 2012, Robert Bruner and Cecil Markley, two employees of Plaintiff

7 who are members of the union and are covered by the 2012–2016 Agreement, filed a class action

8 lawsuit (the "Bruner lawsuit") against Plaintiff in King County Superior Court.  (Dkt. No. 1 at 3)

9 (Compl ¶ 11); (Dkt. No. 26 at 2) (Ans. ¶11.)  Defendant was not a party to the lawsuit.  (Id.)

10 Among other things, plaintiffs in the Bruner lawsuit alleged that Plaintiff violated Washington

11 law by failing to provide "plaintiffs and class members with thirty-minute meal periods . . ."

12 (Dkt. No. 38-2 at 7) ("Third Amended Complaint" ¶8.2.)

13       In April 2012, Defendant agreed to advance expenses Mr. Iglitzin's firm was likely to

14 incur in the Bruner lawsuit, subject to reimbursement from any award of costs the plaintiffs

15 might receive.  (Dkt. No. 39 at 3) (Thal Decl. ¶9.) The agreement was not reduced to writing at

16 that time.  (Id.)  The parties dispute whether Defendant agreed to pay litigation costs or both

17 litigation costs and attorney's fees.  (Dkt. No. 1 at 3) (Compl. ¶12); (Dkt. No. 26 at 2–3) (Ans.

18 ¶12.)  The parties also dispute whether Defendant subsequently agreed, in writing, to pay all

19 litigation costs associated with the Bruner lawsuit, i.e. after the 2012–2016 Agreement was

20 executed. (Dkt. No. 38 at 3) (Iglitzin Decl. ¶8); (Dkt. No. 43 at 8.)

21      On January 9, 2015, following a six-week bench trial, King County Superior Court

22 Judge Dean Lum found that Plaintiff's meal break practices violated the Washington Industrial

23 Welfare Act, RCW 49.12 and WAC 296-126-092.  (Dkt. No. 38 at 6) (Iglitzin Decl. ¶20); (Dkt.

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 3

1  No. 43 at 6.)  The total judgment for the class in the <u>Bruner</u> lawsuit, including backpay and

2  prejudgment interest, was $794,126.95.  (Dkt. No. 38 at 6) (Iglitzin Decl. ¶20.)

3           On June 24, 2013, Plaintiff filed an unfair labor practice ("ULP") charge with the

4  National Labor Relations Board ("NLRB"), alleging Defendant violated Section 8(b)(3) of the

5  National Labor Relations Act ("NLRA"), 29 U.S.C. §158(b)(3), by funding the <u>Bruner</u> lawsuit

6  without disclosing this fact to Plaintiff.  (Dkt. No. 15-1 at 3) ("Charge Against Labor

7  Organization or its Agents.")  The NLRB investigated the charge and dismissed it on January 22,

8  2014, finding there was "insufficient evidence to establish a violation of the Act."  (Dkt. No. 15-

9  1 at 4.)

10          Plaintiff commenced this suit on January 10, 2014 under Section 301 of the Labor-

11  Management Relations Act ("LMRA §301"), 29 U.S.C. §185, while the <u>Bruner</u> lawsuit was still

12  ongoing.  (Dkt. No. 1.)  Plaintiff alleged that by funding the <u>Bruner</u> lawsuit, Defendant breached

13  Section 21.7 of the 2012–2016 Agreement and breached the implied covenant of good faith and

14  fair dealing.  (<u>Id.</u> at 3–4.)  On January 30, 2014, Defendant filed a motion to dismiss Plaintiff's

15  complaint.  (Dkt. No. 15.)  Defendant argued: (1) Plaintiff failed to cite to any provision of the

16  2012–2016 Agreement that Defendant could have conceivably breached; (2) to the extent

17  Plaintiff's claim could be understood as a good faith and fair dealing claim, such a claim was

18  preempted by the NLRA; and (3) Plaintiff's claims were time-barred.  (<u>Id.</u> at 1.)

19          On April 2, 2014, the Court denied Defendant's motion to dismiss.  (Dkt. No. 20.)  The

20  Court agreed with Defendant that Plaintiff could not state a claim for breach of Section 21.7 of

21  the 2012–2016 Agreement, because nothing in Section 21.7 prevented Defendant from

22  "supporting litigation arising from the CBA . . ."  (<u>Id.</u> at 3.)  The Court, however, disagreed with

23  Defendant that Plaintiff's claim was preempted by the NLRA as a ULP claim.  (<u>Id.</u> at 4.)  In so

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 4

1    ruling, the Court found Plaintiff "states a plausible claim for breach of the implied covenant of

2    good faith and fair dealing." (Id. at 4.) The Court also found Plaintiff's claims were not barred

3    by the statute of limitations. (Id. at 5–6.)

4         Defendant now moves for summary judgment arguing: (1) Defendant owed no implied

5    duties to Plaintiff where there was no agreement in effect between the parties; (2) Defendant's

6    fiduciary duties to its members trump any implied duty Defendant may have owed to Plaintiff

7    after the parties executed the 2012–2016 Agreement as a matter of law; (3) even if Defendant

8    owed an implied duty to Plaintiff to discontinue funding a lawsuit that might conflict with the

9    terms of the 2012–2016 Agreement, Defendant did not breach that duty because Section 21.7

10   does not conflict with state law; and (4) Plaintiff cannot show that Defendant's conduct caused it

11   any damage. (Dkt. No. 37 at 8.) Plaintiff opposes Defendant's motion arguing the existence of

12   material issues of fact precludes summary judgment. (Dkt. No. 43.)

13                                        **Discussion**

14        **A.  Legal Standard**

15        Summary judgment is not warranted if a material issue of fact exists for trial. Warren v.

16   City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The

17   underlying facts are viewed in the light most favorable to the party opposing the motion.

18   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary

19   judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

20   the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party

21   moving for summary judgment has the burden to show initially the absence of a genuine issue

22   concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). Once the

23   moving party has met its initial burden, however, the burden shifts to the nonmoving party to

24   establish the existence of an issue of fact regarding an element essential to that party's case, and

1  on which that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

2  323-24 (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but

3  instead must have evidence showing that there is a genuine issue for trial.  <u>Id.</u> at 324.

**B.  Implied Covenant of Good Faith and Fair Dealing**

5  LMRA §301 provides federal jurisdiction over suits alleging breach of contract, such as a

6  CBA, between an employer and a labor union.  29 U.S.C. § 185(a).  Section 301 also confers

7  federal jurisdiction over a claim based on breach of the implied covenant of good faith and fair

8  dealing because the covenant "derives from the [CBA] and is defined by the contractual

9  obligation of good faith."  <u>Audette v. Int'l Longshoremen's & Warehousemen's Union</u>, 195 F.3d

10  1107, 1112 (9th Cir. 1999) (citing <u>Allis–Chalmers Corp v. Lueck</u>, 471 U.S. 202, 218 (1985)).

11  This covenant requires that neither party act to "frustrate the object of [the] contract" or

12  "[destroy] or [injure] the right of the other party to receive the fruits of the contract."  <u>Local 3-7,

13  Int'l. Woodworkers of Am. v. DAW Forest Prods. Co.</u>, 833 F.2d 789, 795 (9th Cir. 1987).

**C.  Plaintiff's Implied Covenant of Good Faith and Fair Dealing Claim**

15  Defendant first argues: (1) it could not have breached the implied covenant of good faith

16  and fair dealing when no agreement was in effect between the parties; and (2) that its fiduciary

17  duties to its members trump any implied duty it may have owed to Plaintiff to discontinue

18  funding the <u>Bruner</u> lawsuit after the 2012–2016 Agreement was executed.  (Dkt. No. 37 at 9–13)

19  (citing <u>GTE North v. Comm'cn Workers of America, Local 4773</u>, 927 F. Supp. 296 (N.D. Ind.

20  1996).)  The Court agrees with Defendant and, therefore, does not reach Defendant's remaining

21  arguments.

22  Plaintiff's claim that Defendant breached the implied covenant of good faith and fair

23  dealing is based on the following actions taken by Defendant: (1) Defendant determined

24  Plaintiff's meal and rest period practice violated Washington law in early 2012 and failed to

1    inform Plaintiff of that determination; (2) Defendant secretly agreed to fund the <u>Bruner</u> lawsuit

2    in April 2012 (without reducing the agreement to writing); (3) Defendant misrepresented its

3    participation in the <u>Bruner</u> lawsuit when Plaintiff asked about it in May 2012; (4) Defendant

4    entered into the Last and Best Final Offer and represented it had no claims under the prior CBA

5    at the time the parties executed the 2012–2016 Agreement; (5) Defendant increased its financial

6    commitment to the <u>Bruner</u> lawsuit after the parties entered into the 2012–2016 Agreement; and

7    (6) Defendant continues to fund the <u>Bruner</u> lawsuit to this date and put itself first in line for

8    recovery of costs of the suit.  (Dkt. No. 34 at 11–13.)

9          Viewing these facts in the light most favorable to Plaintiff, the Court cannot conclude

10    that genuine issues of material fact exist as to whether Defendant could be liable to Plaintiff for

11    breach of the implied covenant of good faith and fair dealing.

12          First, Defendant's conduct before the parties executed the 2012–2016 Agreement cannot

13    support a claim for breach of the implied covenant of good faith and fair dealing, because a claim

14    for breach of the implied covenant of good faith and fair dealing arises where there is an

15    enforceable contract in place between the parties.  <u>See</u> <u>Local 3–7, Int'l Woodworkers of Am.</u>,

16    833 F.2d at 794.

17          Further, while Plaintiff now argues Defendant's pre-Agreement conduct is relevant to its

18    implied covenant of good faith and fair dealing claim, (Dkt. No. 43 at 12–14), Plaintiff has

19    previously argued to this Court that its claim is <u>not</u> based on Defendant's conduct during the

20    bargaining process and is, therefore, not preempted by the NLRA.  (Dkt. No. 17 at 7, n.3)

21    ("Plaintiff's Opposition to Defendant's Motion to Dismiss") ( . . . "Davis Wires' claims in this

22    case focus on Defendant's breach of its legal obligations <u>after</u> the parties agreed to and executed

23    the new CBA.")  Indeed, the Court accepted Plaintiff's earlier position and interpreted Plaintiff's

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 7

1   claim as a claim for breach of the implied covenant of good faith and fair dealing under the

2   2012–2016 Agreement.  (Dkt. No. 20 at 4.)  Because Plaintiff cannot now seek to gain advantage

3   by broadening the scope of its claim, Plaintiff is estopped from taking the position that

4   Defendant's conduct prior to the execution of the 2012–2016 Agreement is the basis of its

5   implied covenant of good faith and fair dealing claim.  See Hamilton v. State Farm Fire & Cas.

6   Co., 270 F.3d 778, 782 (9th Cir. 2001) (courts may consider the following factors when

7   determining whether to apply judicial estoppel: (1) the party's later position is clearly

8   inconsistent with its earlier position; (2) the party succeeded in persuading the court to accept its

9   earlier position; and (3) the party seeking to assert an inconsistent position would derive an

10   unfair advantage if not estopped).

11         Plaintiff's remaining allegations—based on Defendant's conduct after the parties

12   executed the 2012–2016 Agreement—can be summarized as advancing the position that a union

13   breaches the implied covenant of good faith and fair dealing by providing financial support to its

14   members who are bringing a lawsuit that conflicts with a provision of a CBA and by failing to

15   notify the employer that it is providing such support.  (Dkt. No. 43 at 12–13.)  For reasons stated

16   below, the Court declines Plaintiff's invitation to embrace this position.

17         Defendant owes fiduciary duties to its members, including the duty of fair representation.

18   Air Line Pilots Assoc., Int'l v. O'Neill, 499 U.S. 65, 74–75 (1991) (". . . a union owes employees

19   a duty to represent them adequately as well as honestly and in good faith.")  Even if Defendant

20   funded the Bruner lawsuit and even if it did so without disclosing this fact to Plaintiff, these

21   actions did not violate the implied covenant of good faith and fair dealing.  To find that they did

22   would require the Court to conclude that Defendant "was required to act in concert with

23   [Plaintiff] even if it had the good faith, honest belief that the [2012–2016 Agreement] contained

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 8

elements that violated the [] rights of [Defendant's] members." <u>GTE North</u>, 927 F. Supp. at 300.
Such a conclusion would mean that Defendant "owed a greater duty to [Plaintiff], by virtue of
terms implicit to the [2012–2016 Agreement], than it did to its own members, and thus breached
that duty by representing the best interests of its members rather than the interests of [Plaintiff]."
<u>Id.</u>

Such a conclusion has no basis in the law and would lead to objectionable results.
Plaintiff cites to no cases where a court has found that a union breaches the implied covenant of
good faith and fair dealing under facts similar to this case. (Dkt. No. 43.) In the only published
case that the parties cite to in which an employer brought a claim for breach of the implied
covenant of good faith and fair dealing based on similar facts, the court found that such a claim
cannot lie, as a matter of law, in light of a union's fiduciary duties to its members. <u>GTE North</u>,
927 F. Supp. at 301. Further, as Defendant points out in its motion, Plaintiff's position would
require a labor union "to analyze whether any administrative investigation, litigation, legislative
agenda, or political action it wanted to pursue on behalf of its members somehow conflicted,
however slightly, with a provision that had been agreed to in a contract with an employer." (Dkt.
No. 37 at 13.) This would dramatically restrict a union's ability to advocate for its members.

Plaintiff argues Defendant attempts to improperly re-litigate the Court's ruling on
Defendant's motion to dismiss by arguing it cannot be liable for breach of the implied covenant
of good faith and fair dealing as a matter of law in light of its fiduciary duties to its members.
(Dkt. No. 43 at 2.) But the issue of whether a union's implied duties can exceed its fiduciary
duties to its members was not before the Court when it ruled on Defendant's motion to dismiss.
(<u>See</u> Dkt. No. 15.) To the extent the Court's ruling on Defendant's motion to dismiss implied
that a union can be liable for breach of the implied covenant of good faith and fair dealing under

1  the facts of this case, the Court finds that such an implication was in error and departs from it.

2  See U.S. v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) ("A court may have discretion to

3  depart from the law of the case where . . . the first decision was clearly erroneous . . .")

4      Defendant cannot be liable to Plaintiff for breach of the implied covenant of good faith

5  and fair dealing under the facts of this case, because such an implied duty would conflict with

6  Defendant's fiduciary duties to its members.  Therefore, Plaintiff fails to show genuine issues of

7  material fact exist with respect to its implied covenant of good faith and fair dealing claim and

8  summary judgment is appropriate.

9                                  **Conclusion**

10      Because Plaintiff fails to show genuine issues of material fact exist with respect to its

11  implied covenant of good faith and fair dealing claim, the Court GRANTS Defendant's motion

12  for summary judgment.

13      The clerk is ordered to provide copies of this order to all counsel.

14      Dated this 8th day of May, 2015.

15

16                                  Marsha J. Pechman
                                    United States District Judge
17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 10